1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9  Ivy A. Love,                          )     No. CV-03-01399-PCT-MHM
                                         )
10             Plaintiff,                 )     **ORDER**
                                         )
11  vs.                                   )
                                         )
12                                        )
   Phelps Dodge Bagdad, Inc.,           )
13                                        )
               Defendant.               )
14                                        )
                                         )
15 ──────────────────────────────────────)

16

17         Plaintiff, a former employee at Defendant Phelps Dodge Bagdad, Inc. ("Defendant"

18  or "Phelps Dodge"), has filed an amended complaint asserting claims based on age

19  discrimination in employment, in violation of the Arizona Civil Rights Act ("ACRA"),

20  A.R.S. § 41-1463(B)(1)(Count One); age discrimination, in violation of the Age

21  Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1) (Count Two); sex or

22  gender discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended,

23  42 U.S.C. §§ 2000e et seq. (Count Three); and wrongful discharge based on retaliation for

24  exercising rights under Arizona's workers compensation laws, in violation of A.R.S. § 23-

25  1501(3)(c)(iii)(Count Four).  Plaintiff was 52 years of age at the time of the employment

26  action at issue in this case. (Doc. 31).

27         Defendant has filed a motion for summary judgement as to all claims, supported by

28  a legal memorandum and separate statement of facts ("Defendant's Statement of Facts" or

1   "DSOF"). (Doc. 39, 40). Plaintiff has filed a response supported by legal argument and a

2   separate statement of facts ("Plaintiff's Statement of Facts" or "PSOF") (Doc. 46, 47), and

3   Defendant has filed a reply. (Doc. 49).  The Court heard oral argument on Defendant's

4   motion for summary judgment on August 8, 2005.  The Court enters the following Order on

5   Defendant's motion for summary judgment.

6                                              I.

7                                    Standard of Review.

8            A motion for summary judgment may be granted only if the evidence shows "that

9   there is no genuine issue as to any material fact and that the moving party is entitled to

10  judgment as a matter of law."  Fed.R.Civ.P. 56(c).  To defeat the motion, the non-moving

11  party must show that there are genuine factual issues "that properly can be resolved only by

12  a finder of fact because they may reasonably be resolved in favor of either party."  Anderson

13  v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986).  The party opposing

14  summary judgment "may not rest upon the mere allegations or denials of [the party's]

15  pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial."

16  Rule 56(e).  See also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-

17  87, 106 S.Ct. 1348, 1356 (1986).

18                                             II.

19                                    Background Facts.

20           Plaintiff commenced working for a predecessor company in 1972.  Plaintiff became

21  a Supervisor for Defendant Phelps Dodge in 1991. She held this position until August 2002

22  when her employment was terminated.  Plaintiff received training in company policies and

23  procedures and in related personnel matters.

24                  Defendant's investigation into racial harassment on
                Plaintiff's crew and Plaintiff's issuance of counseling records.
25
26           In May 2002, during a communications meeting attended by Mine Superintendent

     Kent Cramer and members of Plaintiff's crew, truck driver Jorge Angeles complained that
27
     he was being racially harassed by fellow crew members. (Doc.40, Exh. 2 - Kent Cramer
28

1   affidavit). Representatives of Defendant's Human Resources ("HR") Department commenced

2   an investigation into Mr. Angeles' complaint and by the end of July 2002, determined there

3   was racial tension in Plaintiff's crew. (Cramer affidavit; Doc. 40, Exh. 3 - affidavit of HR

4   Manager Linda Tanton).

5          Defendant has set forth a factual summary of the incidents that came to light during

6   the investigation. (DSOF at para. 9).  Plaintiff objects to this discussion on hearsay grounds.

7   (PSOF at para. 9).  This information may be admissible at trial to show course of conduct on

8   the part of Defendant's employees. Defendant also may present witnesses who can testify as

9   to these incidents based on first-hand knowledge.  The Court has considered the information

10  to the extent it can be based on personal knowledge or could be presented in an admissible

11  form at trial. See Fraser v. Goodale, 342 F.3d 1032, 1036-37 (9th Cir. 2003)(contents of

12  plaintiff's diary considered on summary judgment; "[a]t the summary judgment stage, we do

13  not focus on the admissibility of the evidence's form").

14         The cited incidents included the following. Mr. Angeles and Mr. Jose Tarango, a

15  fellow crew member, complained about being "rough loaded" by Caucasian shovel operators;

16  Mr. Angeles complained that he had been struck on two occasions by a specific Caucasian

17  shovel operator; Caucasian employees used the public radio system to criticize Mr. Angeles'

18  work performance; and Caucasian employees had made derogatory comments in reference

19  to Hispanic ethnicity. During the investigation, a racially abusive flyer was left on the truck

20  Messrs. Angeles and Tarango used in carpooling to work. The abusive message on the flyer

21  contained words clipped from newspapers and magazines and the author signed the message

22  "a good friend."

23         As part of the investigation, Defendant's HR officials interviewed Plaintiff who

24  claimed to know few, if any, of the problems on her crew. Members of Plaintiff's crew,

25  however, complained that the problems were evident but that Plaintiff made no effort to solve

26  them.  Defendant claims that, as a result of the investigation, its HR officials concluded that

27  Plaintiff either had misrepresented her knowledge of the **harassment incidents or had**

28  **abdicated her responsibilities as a supervisor by failing to address them.**

1    On July 25, 2002, Superintendent Cramer placed Plaintiff under Notice of

2  Investigation.  This meant that she was on notice of possible disciplinary action and denied

3  property access pending the result of the investigation.

4    On August 1, 2002, Superintendent Cramer notified Plaintiff that her performance as

5  a supervisor had been unacceptable and placed her on a "final written counseling and

6  decision-making leave."  The stated purpose of this action was to provide Plaintiff with the

7  opportunity to correct her performance and to "commit" to maintaining an acceptable

8  performance level. Plaintiff also was given the opportunity to resign. Defendant informed

9  Plaintiff of certain corrective action expected of her, including the submission of a problem

10 solving and action plan, performing her supervisory responsibilities, and following

11 Defendant's "Guiding Principles", referring to the employee handbook. Defendant also

12 required Plaintiff to meet with Mr. Angeles and her crew to promise no further

13 discrimination, retaliation and favoritism. Plaintiff chose to continue her employment and

14 attempt to correct any performance problems, stating specifically that she "[understood]" and

15 "agree[d]" that failure to meet her responsibilities could result in disciplinary action,

16 including termination of employment.

17    Plaintiff testified during deposition that part of a Phelps Dodge supervisor's job is to

18 make sure there is no harassment or retaliation with respect to crew members.  Plaintiff

19 maintained that she could not have known about the alleged harassment because Mr. Angeles

20 had not reported it to her but had complained only to her supervisor, Superintendent Cramer.

21    On August 26, 2002, Plaintiff issued ten notices of improper conduct, referred to as

22 "counseling records", to various members of her crew, including Messrs. Angeles and

23 Tarango. Regarding this activity, Plaintiff testified during her deposition that on August 15,

24 2002, she met with her supervisor Mr. Cramer and asked him what to do about the "mild

25 work mistakes" she had pending concerning certain employees, including Messrs. Angeles

26 and Tarango. Plaintiff testified that Mr. Cramer instructed her to "give them informal

27 coaching." (Doc. 46 at p.5). Plaintiff contends that, considering she was about to be fired,

28 it is inconceivable that she would have written up the documented counseling records

- 4 -

1   relevant to these employees without Superintendent Cramer's approval. (id.). **Defendant on**

2   **the other hand contends that these numerous counseling records were inappropriate because**

3   they did not comply with company guidelines or policy, they exhibited retaliation or

4   preferential treatment, and they were not authorized by Mr. Cramer.

5           The August 26th counseling records Plaintiff issued can be summarized as follows.

6   Plaintiff issued Mr. Angeles four counseling records, one of which instructed him not to read

7   or play Game Boy or other games on the job. According to Defendant, two Caucasian

8   employees had reported on July 25, 2002 that Mr. Angeles had been reading while on shift.

9   During her deposition Plaintiff initially seemed to state that this counseling record was

10  appropriate but then indicated that it was inappropriate because there had been no

11  investigation or complaint that Mr. Angeles had been playing games while on duty. (Doc.

12  40, Exh. 1 at 170-71, 175-76). Plaintiff also acknowledged that the "record", issued

13  approximately one month after the alleged incident, could be viewed as untimely. (id., at

14  178). The other three counseling records Plaintiff issued to Mr. Angeles concerned minor

15  incidents that had occurred within the previous ten days. Plaintiff testified that, based on her

16  "shift notes," Mr. Cramer told her to issue these three counseling records to Mr. Angeles.

17  Defendant contends that all four of the counseling records Plaintiff issued to Mr. Angeles

18  were inappropriate, the records could have been perceived as retaliation and that, even if Mr.

19  Cramer had authorized their issuance, Plaintiff had the responsibility to raise concerns about

20  their propriety with Mr. Cramer or the Human Resources Department.

21          Plaintiff issued two counseling records to Mr. Tarango on August 26. One of the

22  records concerned an incident that had occurred on July 2, 2002. Mr. Cramer does not

23  dispute that he instructed Plaintiff to issue this counseling record but states that he did so

24  immediately after the July 2 incident. Plaintiff testified during her deposition that she could

25  not recall whether Mr. Cramer had instructed her to issue the counseling record and that this

26  record was untimely. (Doc. 40, Exh. 1 at 197, 203). Plaintiff's second counseling record

27  issued to Mr. Tarango was an "informal coaching" based on his alleged improper operation

28  of the dispatch buttons on his truck on August 24, 2002. Plaintiff testified that this incident

1    was referenced in her shift notes and she received instructions from Mr. Cramer to issue the

2    counseling record. Superintendent Cramer denies instructing Plaintiff to issue this second

3    counseling record to Mr. Tarango, stating that between the time of the incident on August

4    24, 2002 and the counseling record on August 26, he and Plaintiff were not at the workplace

5    at the same time.

6          On the same day as Plaintiff issued the counseling records to Messrs. Angeles and

7    Tarango, Plaintiff gave C.J. Turner  an "informal coaching" for a missed work shift instead

8    of the more serious "first written counseling record" required by company guidelines.  Ms.

9    Turner was a Caucasian shovel operator on Plaintiff's crew who was working as a substitute

10   on another crew but had failed to show up for work. Plaintiff maintains that she did not

11   violate company procedure regarding this incident. Plaintiff explained the informal coaching

12   by stating that she expected the other shift supervisor to investigate the matter and issue the

13   appropriate disciplinary action, although she was not aware whether two supervisors

14   responding to the same incident was normal company procedure.  (Doc. 40, Exh. 1 at 209,

15   214).  Defendant contends that Plaintiff and Ms. Turner are longtime friends, that Plaintiff

16   could have admonished Ms. Turner  orally and that Plaintiff showed favoritism toward Ms.

17   Turner by administering her less severe disciplinary action.

18                          Plaintiff's work-related injury on August 16, 2002.

19         On August 16, 2002, Plaintiff strained her back at work and toward the end of her

20   shift that day reported to the medical clinic. Plaintiff was diagnosed with a strained back and

21   released for immediate return to her duties. Plaintiff did not miss any work in connection

22   with this incident. On August 23, 2002, a member of the Phelps Dodge Safety Department

23   submitted an "Employer's Report on Industrial Injury" concerning the incident to the

24   Industrial Commission of Arizona. Plaintiff did not receive workers' compensation benefits

25   because she did not lose time from work. Plaintiff testified during deposition that she saw the

26   injury report Defendant submitted to the Industrial Commission for the first time on the day

27   of her deposition.  Plaintiff testified during deposition that she may have been told about the

28   claim.

1    Plaintiff received an "informal counseling" record as a result of the back strain

2  incident.  Plaintiff testified in her deposition that, following a meeting (manager's review),

3  Superintendent Cramer told her in private, "You are not going to get fired over this, but I

4  would sure like to." Plaintiff understood "this" to mean the underlying back strain incident.

5  Mr. Cramer denies making this comment. (Cramer affidavit, para. 8).  Plaintiff testified that

6  there was a "coldness" in the way management treated her around this same time and that the

7  counseling record she received indicated to her that she should not report first-aid related

8  incidents in the future. Plaintiff also testified that the issuance of the counseling record is

9  normal company practice.

10                              Plaintiff's employment termination.

11         Plaintiff's employment was terminated on August 28, 2002.  Defendant contends that

12  the reasons for Plaintiff's termination are twofold. First, based on the racial harassment

13  complaints and Defendant's resulting investigation into the matter, it was determined that

14  Plaintiff either had misrepresented her knowledge of the complaints or had abdicated her

15  supervisory responsibilities by failing to address them.  Defendant therefore placed Plaintiff

16  on final warning regarding her employment. Second, while on final warning, Plaintiff issued

17  inappropriate disciplinary records to Messrs. Angeles and Tarango and her action indicated

18  retaliation.  She issued an inappropriate "informal coaching" to Ms. Turner, a Caucasian, in

19  violation of company policy and this lesser disciplinary action indicated Plaintiff's favoritism.

20         At the time of Plaintiff's employment termination, she was one of four Mine

21  Operations supervisors.  The other supervisors were Brian Garrity, Lloyd Murphy and Garnet

22  Sipes. Plaintiff testified during deposition that two male co-employees engaged in

23  inappropriate conduct more serious than hers but their employment was not terminated.

24  Plaintiff identified Mr. Lloyd Murphy who allegedly lived with a female co-employee whom

25  he did not supervise and Mr. Ron Harness who once publicly criticized a group of co-

26  employees who had gathered socially at a bar. Defendant contends that these incidents are

27  not similar to Plaintiff's circumstances because these employees were not on a last-warning

28  and their conduct was not necessarily inappropriate.

1    Plaintiff also has referenced an August 26, 2002 incident when Ms. Turner allegedly

2  reported to Human Resources that Brian Frank, a fellow crew member, had commented, "The

3  party is at my house if they fire that bitch," referring to Plaintiff. Defendant did not

4  investigate the reported incident or the circumstances surrounding the remark. (DSOF, para.

5  47). Ms. Tanton of Defendant's HR staff has stated in an affidavit that the comment incident

6  was not investigated because it did not relate to the issue they were investigating at the time

7  and the HR representatives did not have time to look into it. (Tanton affidavit, para. 14).

8    Plaintiff testified that approximately one year before her employment was terminated,

9  Mine Operations Supervisor Brian Garrity, who at the time was younger than 40 years of age,

10  was made a "senior" supervisor. Plaintiff testified during deposition that she and two of her

11  male colleagues were more deserving of the "senior" designation.

12    Defendant states that Plaintiff was replaced by Mine Operations Supervisor Lloyd

13  Murphy who is six months younger than Plaintiff. Both were born in 1950. Plaintiff agrees

14  that Mr. Murphy replaced her but speculates that Mr. Garrity "may have filled in for the

15  vacancy left when Plaintiff was fired, showing gender discrimination." (PSOF, para. 48).

16    Plaintiff claims that, at the time of the employment action in this case, she was four

17  years away from an "old timer's" retirement benefit.

18    Plaintiff filed an EEOC charge in which she claimed to have been fired from her

19  employment based on age and sex discrimination. On April 29, 2003, the EEOC issued a

20  Dismissal and Notice of Rights.

21                                                III.

22                                          Discussion.

23    Defendant has moved for summary judgment on all of Plaintiff's claims. Defendant's

24  motion is supported by a discussion of the facts of this case and applicable case law relevant

25  to each of the claims asserted. Plaintiff's response in opposition contains a factual discussion

26  relevant to her specific argument that genuine issues of material fact preclude summary

27  judgment. Plaintiff's factual discussion focuses on the complaints of racial harassment

28  involving her crew, the counseling reports she issued, and her claim that Superintendent

1   Cramer approved her issuance of the counseling reports.  Plaintiff states the issue as follows:

2   "The main question in the Defendant's Motion for Summary Judgment is 'Could reasonable

3   persons differ about whether or not Supervisor Kent Cramer gave Plaintiff instructions to

4   give the ten documented informal coaching statements to employees, all dated August 26,

5   2002, or did Plaintiff intend to commit job suicide by making such ten documented informal

6   coachings without Cramer's knowledge or authority?'"  (Doc. 46 at 5-6).  Plaintiff has not

7   included in her response a discussion of authority relevant to the elements of her claims.

8   (A)      Plaintiff's Age Discrimination Claims (Counts One and Two).

9            1.      The ADEA.

10           The ADEA makes it "unlawful for an employer . . . to discharge any individual . . .

11  because of such individual's age." 29 U.S.C. § 623(a)(1). The plaintiff must establish a prima

12  facie case of discrimination either through evidence showing the employer intended to

13  discriminate or through a presumption arising from proof of the McDonnell factors. Villodas

14  v. HealthSouth Corp., 338 F. Supp. 2d 1096, 1101 (D. Ariz. 2004) (citing McDonnell

15  Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973) and Wallis v. J.R.

16  Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994)). Plaintiff must show that (1) she was over 40

17  years of age; (2) she was satisfactorily performing her employment responsibilities;  (3) she

18  was discharged from her employment; and (4) she was replaced by a substantially younger

19  employee with equal or inferior qualifications.  Coleman v. Quaker Oats Co., 232 F.3d 1271,

20  1281 (9th Cir. 2000); Mundy v. Household Finance Corp., 885 F.2d 542, 545 (9th 1989).

21           The plaintiff in an employment discrimination case "need produce very little evidence

22  in order to overcome an employer's motion for summary judgment." Chuang v. Univ. of Cal.

23  Davis, Bd. of Trustees, 225 F.3d 1115, 1124 (9th Cir. 2000). The plaintiff need only offer

24  evidence that "gives rise to an inference of unlawful discrimination." Wallis v. J.R. Simplot

25  Co., 26 F.3d 885, 889 (9th Cir. 1994) (quoting Lowe v. City of Monrovia, 775 F.2d 998,1005

26  (9th Cir. 1985)).

27           The standard summary judgment principles apply, and a shifting burden analysis is

28  used. Rose v. Wells Fargo & Co., 902 F.2d 1417, 1420 (9th Cir. 1990). Throughout, the

1   plaintiff retains the burden of persuasion. <u>Texas Dep't of Community Affairs v. Burdine</u>, 450

2   U.S. 248, 253, 101 S.Ct. 1089, 1093 (1981). When a plaintiff alleges disparate treatment,

3   "liability depends on whether the protected trait (under the ADEA, age) actually motivated

4   the employer's decision." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 141,

5   120 S.Ct. 2097, 2105 (2000) (quoting <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604, 610, 113

6   S.Ct. 1701 (1993)). If the plaintiff succeeds in making a prima facie showing of illegal

7   discrimination, then the defendant must articulate some legitimate, nondiscriminatory reason

8   for the employee's rejection.    <u>Reeves</u>, 530 U.S. at 141, 120 S.Ct. at 2105 (quoting

9   <u>McDonnell</u>, 411 U.S. at 802, 93 S.Ct. at 1824). The burden is one of production, not

10  persuasion, and does not involve a credibility assessment. <u>Reeves</u>, at 142, 120 S.Ct. at 2106

11  (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 509, 113 S.Ct. 2742, 2749 (1993)).

12          The burden then shifts back to the plaintiff to prove that the legitimate reason

13  proffered by the  defendant is a pretext for discrimination. <u>Reeves,</u> at 143, 120 S.Ct. at 2106.

14  A plaintiff may show that the defendant's reason is a pretext either directly by showing that

15  a discriminatory reason more likely motivated the employer or indirectly by showing that the

16  employer's proffered explanation is unworthy of credence.  <u>Villiarimo v. Aloha Island Air,</u>

17  <u>Inc.</u>, 281 F.3d 1054, 1062 (9th Cir. 2002) (citing <u>Chuang</u>, 225 F.3d at 1123). The plaintiff

18  may rely on circumstantial evidence to show pretext, but it must be both specific and

19  substantial. <u>Villiarimo</u>, at 1062 (citing <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1222

20  (9th Cir. 1998)).

21          2.    <u>The ACRA</u>.

22          Plaintiff has asserted a claim for age discrimination under the Arizona Civil Rights

23  Act ("ACRA") (Count One). The ACRA mirrors the relevant federal language and thus,

24  federal law is persuasive in interpreting the statute. <u>See</u> <u>Timmons v. City of Tucson</u>, 830 P.2d

25  871, 875 (Ariz. App. 1991); <u>Storey v. Chase Bankcard Services, Inc.</u>, 970 F.Supp. 722, 724

26  (D. Ariz. 1997).

27          3.    <u>Analysis</u>.

28                <u>Plaintiff's prima facie case</u>.

- 10 -

1    Defendant contends that Plaintiff has failed to make out a prima facie case of age

2  discrimination and in fact, Plaintiff failed to address the issue in her response.  Defendant

3  also points out that Plaintiff admits in her statement of facts that she was replaced by Mr.

4  Murphy who is six months younger than Plaintiff.

5    "The fact that one person in the protected class has lost out to another person in the

6  protected class is thus irrelevant, so long as he has lost out *because of his age*."  O'Connor

7  v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312, 116 S.Ct. 1307, 1310 (1996). It is

8  more difficult to draw an inference of age discrimination if there is not a substantial

9  difference in age between the plaintiff and the replacement employee. Id. The six-month age

10 difference between Plaintiff and Mr. Murphy is insubstantial. An inference that an

11 employment decision was based on age cannot be drawn from the replacement of one worker

12 with another worker insignificantly younger. Id., 517 U.S. at 313, 116 S.Ct. 1307.

13   Plaintiff may show age discrimination based on other evidence indicating that her

14 employer considered age to be significant.  However, Plaintiff in her summary judgment

15 response has not argued any facts in support of her age discrimination claim. Plaintiff has

16 simply argued that a genuine issue of material fact exists regarding whether Mr. Cramer

17 authorized Plaintiff to issue the counseling records.  Plaintiff has not identified any facts that

18 link this issue, or her employment termination, to her claim of age discrimination.  The Court

19 has no obligation to "scour" the record  in search of a genuine issue of triable fact.  Keenan

20 v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996)(it is not the court's task to scour the record in

21 search of a genuine issue of triable fact; the court relies on the nonmoving party to identify

22 with reasonable particularity the evidence that precludes summary judgment).  By failing to

23 refute the defendant's assertions on summary judgment, a plaintiff has conceded those points.

24 Whetzel v. Mineta, 364 F. Supp. 2d 1077, 1083 (D.Alaska 2005).

25   The Court notes that Plaintiff testified that "she believes she was four years away from

26 an 'old timer's' retirement benefit" when her employment was terminated. (PSOF at para. 52).

27 There are no facts of record that establish that Plaintiff's alleged eligibility for a retirement

28 benefit in four years played a role in the employment decision.  See Thornhill Pub. Co. Inc.

1  v. General Tel. & Electronics Corp., 594 F.2d 730, 738 (9th Cir. 1979)(speculative testimony

2  in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat

3  summary judgment). Moreover, discharging an employee who is close to retirement, without

4  more, does not violate the ADEA.  Hazen Paper Co. v. Biggins, 507 U.S. at 610, 113 S.Ct.

5  1701.  Summary judgment in favor of Defendant on Plaintiff's age discrimination claims

6  under the ADEA and the ACRA is appropriate.

7  (B)     Plaintiff's Sex or Gender Discrimination Claim (Count Three).

8         The legal principles applicable to a claim of gender discrimination are much the same

9  as that for age discrimination. The plaintiff bears the initial burden of establishing a prima

10 facie case of sex discrimination. Bradley v. Harcourt, Brace and Co., 104 F.3d 267, 280 (9th

11 Cir. 1996). The plaintiff must offer evidence that gives "rise to an inference of unlawful

12 discrimination." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998) (quoting

13 Burdine at 253, 101 S.Ct at 1093). The plaintiff may rely on the McDonnell factors, and

14 demonstrate (1) that she belongs to a protected class; (2) was qualified for the position; (3)

15 was subject to an adverse employment action, and (4) that similarly situated individuals

16 outside her protected class were treated more favorably or her position was filled by a male.

17 Leong v. Potter, 347 F.3d 1117, 1124 (9th Cir. 2003); Villiarimo, 281 F.2d at 1062.

18        If plaintiff makes a prima facie case, the burden shifts to the employer to state a

19 legitimate, nondiscriminatory reason for terminating the employee's employment. Burdine,

20 450 U.S. at 253, 101 S.Ct. at 1093. The plaintiff then must have an opportunity to show that

21 the employer's reasons for the adverse employment decision were a pretext for

22 discrimination. Id. The burden of persuasion remains on the plaintiff. Id. The plaintiff may

23 offer direct evidence or produce "specific" and "substantial" circumstantial evidence that

24 "tends to show the employer's proffered motives were not the actual motives because they

25 are inconsistent or otherwise not believable." Godwin, 150 F.3d at 1222 (citing Bradley, 104

26 F.3d at 270).

27        1.     Prima facie case.

28

- 12 -

1    Plaintiff, who is female and a member of a protected class, suffered an adverse

2    employment action, that is, termination of employment. Because Plaintiff in her response has

3    focused on the circumstances surrounding the alleged racial harassment claims concerning

4    her crew and the events that followed culminating in her employment termination, Plaintiff

5    appears to be contending that she was satisfactorily performing her job, that is, she properly

6    issued the counseling records to members of her crew as directed by Superintendent Cramer.

7    Plaintiff was replaced by Mr. Murphy, a male colleague. Viewing the facts in a light most

8    favorable to Plaintiff, she has presented a prima facie case of sex discrimination.

9         2.    Defendant's legitimate nondiscriminatory reason for the employment action.

10   Defendant contends that Plaintiff's employment was terminated based on legitimate

11   non-discriminatory reasons. Defendant's facts show that the investigation into the claims of

12   racial harassment on Plaintiff's crew revealed that Plaintiff had neglected her supervisory

13   duties.  Plaintiff was issued a final written warning which notified her that she could not

14   discriminate, retaliate,  or show favoritism toward members of her crew and that she must

15   follow the company's Guiding Principles.  Within four weeks of this action, Plaintiff issued

16   corrective notices to the two Hispanic employees who had  complained of racial harassment.

17   One of the notices issued to Mr. Angeles was unfounded and untimely and one of the notices

18   issued to Mr. Tarango was untimely.  In addition, Plaintiff issued a lesser form of discipline

19   to Ms. Turner, her Caucasian friend, thereby indicating favoritism. Based on this explanation,

20   together with evidence of the written warning and the counseling records, Defendant has

21   articulated a legitimate nondiscriminatory reason for terminating Plaintiff's employment.

22        3.    Pretext.

23   The issue is whether at this stage on summary judgment proceedings Plaintiff has

24   demonstrated the existence of evidence to create a genuine issue of material fact as to

25   whether the reasons proffered by Defendant for terminating her employment were a pretext

26   for discrimination. Plaintiff has not argued in her response any facts except for claiming that

27   a jury needs to decide whether she was authorized to issue the counseling records and that

28   a favorable finding on that issue could be considered as evidence of discrimination.  Plaintiff

1    has not identified any facts that indicate that Defendant's reasons for the employment action

2    were pretextual. Plaintiff's failure to refute the defendant's assertions on summary judgment

3    results in a concession on the point. Whetzel, 364 F. Supp. 2d at 1083.

4         Regarding any inference that might be drawn from Mr. Garrity's "senior designation"

5    which occurred when he was less than 40 years of age, this event occurred  approximately

6    one year prior to Plaintiff's employment termination. It therefore is too remote to be

7    considered as circumstantial evidence of pretext. See Wilson v. B/E Aerospace, Inc., 376

8    F.3d 1079, 1092 (11th Cir. 2004)(in sex discrimination case evidence that plaintiff did not

9    receive promotion in November 1999 was too remote to be linked to plaintiff's employment

10   termination in February 2001).  Plaintiff testified on deposition that there actually was not

11   a "senior supervisor" position for Mr. Garrity but he got the title, although his job was the

12   same as Plaintiff's, and possibly more pay.  (Doc. 40, Exh. 1 at 62).  Such speculation is not

13   sufficient to support a claim of sex discrimination.

14        Plaintiff does state in her statement of facts that she was replaced by a male resulting

15   in no female supervisors.  This fact is not sufficient where a plaintiff has failed to show that

16   all of the purported reasons for the employment action were pretextual.  Walker v. Board of

17   Regents of University of Wisconsin System, 410 F.3d 387, 395 (7th Cir. 2005).

18        In this case, Plaintiff testified during deposition that, regarding one of the counseling

19   records issued to Mr. Angeles on August 26th, she did not investigate the reported incident

20   that Mr. Angeles was reading on the job. She simply told Mr. Angeles that it had been

21   reported and that reading on the job was not permitted. (Doc. 40, Exh. 1 at 166-67).  She

22   further testified that besides telling him that reading on the job was not permitted, she also

23   told him "no Game Boys and stuff like that."  (id., at 167).  When asked about this reference

24   to Game Boy, Plaintiff testified that no one had reported to her that Mr. Angeles had been

25   playing Game Boy or any other game.  Plaintiff also had not known Mr. Angeles to play

26   Game Boy or any other games on the job.  (id., at 170-71).  Plaintiff claimed she had given

27   Mr. Angeles an "informal couching" as directed by Mr. Cramer but "it was the wrong form

28   to use".  When asked if there was a correct form, Plaintiff answered "probably not."  (id., at

1    175).  Plaintiff also testified that it was not her practice to wait a month before taking action

2    regarding a member of her crew, she personally did not think it was a good idea to issue Mr.

3    Angeles the counseling, and that she was not surprised to learn that Mr. Angeles viewed the

4    counseling as retaliatory.  (id., at 178-79).

5           When asked about the August 26th first written counseling record issued to Mr.

6    Tarango involving an incident that had occurred on July 2nd, Plaintiff was unable to explain

7    why the counseling record had occurred. Plaintiff could not recall a discussion with Mr.

8    Cramer in which he directed her to issue the counseling record or with anyone else.  (Doc.

9    40, Exh. 1, at 201-02).  Plaintiff did not "view" the counseling record as untimely but

10   answered yes when asked if it was in fact untimely.  (id., at 202-03). Plaintiff did not see this

11   "as a problem", testifying that she had "so  much on [her] mind that she didn't pay any

12   attention."  (id., at 203).

13          These undisputed facts evidence that Plaintiff on her own issued inappropriate

14   counseling records to two members of her crew. This activity justified Defendant's

15   employment termination decision as to Plaintiff, a supervisor on final written warning

16   regarding her work performance. Defendant's motion for summary judgment on Plaintiff's

17   claim of sex discrimination is granted.

18   (C)    Plaintiff's Retaliation Claim based on A.R.S. § 23-1501(3)(c)(iii) (Count Four).

19          Plaintiff's retaliation claim is based on allegations that the adverse employment action

20   occurred in response to her exercise of her rights under Arizona's worker's compensation

21   laws. Defendant contends in its reply that Plaintiff's response on summary judgment did not

22   address her retaliation claim and this omission should be construed as a concession.

23          Arizona statutes bar employment termination in retaliation for an employee's

24   exercising rights under the workers' compensation statutes. A.R.S. § 23-1501 (3)(c)(iii).

25   Plaintiff's claim is for wrongful  discharge based on retaliation. Thompson v. Better-Bilt

26   Aluminum Products Co., Inc., 927 P.2d 781, 787 (Ariz. App. 1996)("[t]ermination in

27   retaliation for filing a workers' compensation claim can serve as the basis for a cause of

28   action for wrongful discharge").  A plaintiff may establish a prima facie case of retaliation

1   by showing that he or she engaged in a protected activity, suffered an adverse employment

2   decision, and that there was a causal link between the protected activity and the adverse

3   employment decision.  Villiarimo, 281 F.3d at 1063 (citing Yartzoff v. Thomas, 809 F.2d

4   1371, 1375 (9th Cir. 1987)); Chaboya v. Am. Nat'l Red Cross, 72 F. Supp. 2d 1081, 1093

5   (D. Ariz. 1999). Filing a workers compensation claim is a protected activity. Thompson, 927

6   P.2d at 787.

7         As Defendant has pointed out, Plaintiff did not address the retaliation claim in her

8   summary judgment response.   Plaintiff therefore has conceded Defendant's argument.

9   Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

10        **Accordingly,**

11        **IT IS ORDERED** that Defendant's motion for summary judgment as to all of

12  Plaintiff's claims (Doc.39) is granted.

13        **IT IS FURTHER ORDERED** that Judgment shall be entered accordingly.

14        DATED this 26th  day of September, 2005.

15

16

17  _____
        Mary H. Murguia
18      United States District Judge

19

20

21

22

23

24

25

26

27

28

- 16 -